I do have a motion before the court I move for the admission of Charles Hardy Davis he's a member of the bar and is in good standing with the highest courts of Virginia and the District of Columbia I have vast knowledge of his qualifications because he's been a law clerk for me for now just about going on 18 months he is quite the brainiac with the degree in chemistry with all kinds of honors and a PhD to follow on that and then he just happened to be first in the class and editor-in-chief of the Law Review at GW and he is he knows more about the Supreme Court than any of us care to ever know and he has been a wonderful admission to our chambers and he will be greatly missed but we know he's going to go on to do great things so I would move his admission well I'll see we will take a vote. Judge Chen, how do you vote? It is my great pleasure to grant the motion please approach the clerk before the hour. Congratulations, welcome to the bar of the court. We look forward to listening to your arguments in the future. Thank you. The hearing is scheduled for this morning. The first case is number 151148. Kellogg Brown and Ruth Services against the Army. Mr. McQuish. Good morning, may it please the court. Under this cost reimbursement contract KBR's claim for non-reimbursement of costs could not approve until KBR had requested payment from the government and the government had failed to pay. Well I appreciate the argument but to carry that to an extreme if KBR and its subcontractor had been arguing for years as perhaps they were with the understanding that whatever they finally resolved would be presented to the government the Army for payment you're saying that there is no claim until that final step is taken? Yes, under this court's ruling in Parsons Global, cited in our briefs, a contractor, a prime contractor with the government under a cost reimbursement contract cannot bring a claim, the claim is not right, a CDA claim, until it's requested payment from the government and the government has declined to pay. So we have to conclude that this is different from contract law in general? It's not different from contract law in general except to the extent that the Federal Acquisition Regulation changes it and the Federal Acquisition Regulation defines claim approval and we're relying on two parts of that definition to argue that this claim had not approved six years prior to when the claim was submitted in May of 2012. Those two elements are first, all of the, the government to show that the claim accrued more than six years before must show that all events that permit assertion of the claim had not occurred or had occurred, I'm sorry, six years early and they must show that KBR had suffered some injury. Both of those things. The first one, permit, all events that permit assertion of the claim had not occurred until KBR requested payment from the government and government failed to pay. Until then, the government had not done anything. It wasn't even aware of the issue. I guess following up on Judge Newman's question, what if the prime contractor and the subcontractor were in litigation for 15 years? Sometimes litigation unfortunately takes a very long time and the dispute is what was actually performed by the subcontractor, alleged damages that the subcontractor suffered by the termination of the subcontract. I mean, does that mean that the government has to wait 15 years or even longer before it receives, as you would put it, a routine request? Yes, there are procedures and rules in place that protect the government in that instance. For one thing, under the allowable costs and payment clause, which is the central clause in a cost reimbursement contract that allows the contractor to get paid during performance, submitting proof of costs and getting finance throughout. Under that clause, the contractor must submit all its costs by the closeout of the contract at the end. When the contract is ready to close out, which has not even happened yet with this KBR contract and often doesn't happen for a number of years. But there is also a provision there that allows the contractor to inform the government that some costs are yet undetermined and keep the government informed that those additional costs are coming down the pipe. And in fact, in this case, KBR kept the government informed at every step. KBR and the subcontractor reached an initial settlement where KBR paid the subcontractor $17.4 million, immediately requested payment from the government, got payment on that $17.4 million and told the government there's more coming. We're working it out with the subcontractor. Then there was litigation. So just to follow up on the question again, what if the prime contract was for a term of four years, but the litigation between the subcontractor and the contractor, prime contractor, took 10 years? If you jump through, the contractor has an obligation to tell the government there is this unresolved issue and they are supposed to have a list of claims that are remaining at the time of contract closeout that the government is on hold for going forward. So in effect, the contract doesn't get closed out in entirety until that issue is resolved. And that happens. That occurs. But in this instance, it's clear that the contract is still not over. It certainly wasn't over at the time that KBR submitted its claim. And it submitted its claim well within six years of when it first requested any payment at all. The earliest you could say that KBR requested payment was in November of 2006. Does it matter as a matter of fact that the subcontractor was not operating under the original contract during the interim period? No, that doesn't matter to KBR's claim. KBR's claim against the government is the only claim it can have under a cost reimbursement contract essentially, which is we incurred these costs. You need to reimburse them, government. And the circumstances under which those costs were incurred could affect whether it's reimbursable, whether it's reasonable, allowable, allocable. But the government has never said that it's not paying these costs on that ground. It just hasn't paid them. So KBR's claim is we have these costs. Please pay them. And under Parsons Global, until the contractor has asked for payment and not been paid, the government hasn't done anything to give rise to a CDA claim against it. And so there can be no claim. Therefore, the statute of limitations cannot yet be run. Did you and the government discuss the possibility of a joint remand to the board to address Sikorsky? We have not discussed that, no, Your Honor. And I don't think a remand in light of Sikorsky is necessary because the court can rule that on the undisputed facts that the claim is not barred by the statute of limitations. However, I don't think the court could affirm the board in light of the fact that the board made fact findings on the assumption that it was KBR's burden to prove that the claim was timely when under Sikorsky it's in fact the government's burden to prove that the statute of limitations had run. So the board should not have made fact findings adverse to KBR. That's what troubles me. The statute says when the claim accrues, and you're telling us that the claim doesn't accrue until a request for payment is made to the government. And denied. Even though all of the facts existed as to the claim, there were negotiations with the subcontractor, that it's understood that this will be essentially a subcontractor claim passed through. The government said that KBR needs to resolve it. But trying to understand really the difference between when a claim accrues from the limitations viewpoint. We know that the board thought it had accrued well before the demand for payment to the government. Right, and that's because under a cost reimbursement contract, there's no claim. The prime contractor does not have a CDA claim, a claim that the government has done something that gives rise to a claim under the Contract Disputes Act until the government has violated the contract in some way, such as by not paying when requested. The fact that it's a subcontractor arguing with KBR about the amount, that goes to whether there's a claim under the subcontract. Whether the subcontractor has a claim. But under the Severn Doctrine, as discussed in some detail in our brief, the subcontractor does not have a claim against the government, cannot bring a claim against the government. The prime contractor cannot bring a claim against the government based on the subcontractor claim unless the prime contractor is liable to the subcontractor. In other words, the prime contractor has to have been injured by some action of the government. Either the government injured the subcontractor, which is not the case here, or the government has done something to injure the prime contractor. Here, the thing that the government did to injure the prime contractor was fail to pay when requested. That's the only injury that KBR could have or did suffer at the hands of the government. And until that happened, there was no basis for a CDA claim against the government. Regardless of what was happening between KBR and its subcontractor, all that that means is that KBR was incurring costs as it was supposed to under its cost reimbursement contract. And until the day of final payment comes, KBR is free to submit its costs to the government and get paid. So if I can maybe sum up your position, from the government's perspective with its contract with KBR, the government shouldn't care if there's some kind of squabble between KBR and its subcontractor. All that matters to the government is a request comes into the government for reimbursement of costs that were incurred in the performance of the prime contract, right? Correct. And so if that request, in fact, factually reflects costs incurred in performance of task order 59, then that's all that should matter and therefore it's a routine request, just like any other request for costs incurred according to the contract. Correct. Just as in Parsons Global, it was a subcontractor was owed money by the prime contractor, and the prime contractor, the contract had long been terminated for convenience, and the prime contractor was coming in with new subcontractor costs and asking to be paid, and it submitted a claim, denied and it was appealed, and this court said that claim was too early, was not right, because you had not yet followed the contractual mechanism to get paid. The request for reimbursement you put in, it included construction costs, meals served, overhead, profit, and something called termination settlement proposal resolution costs, right? Correct. That last item, why is that a routine request? Because prime contractors on the cost reimbursement contracts settle and terminate their subcontractors. Frequently this happens and it's an allowable cost under the allowable cost and payment clause, under the cost principles under the FAR. Termination costs with your subcontractor are usually allowable. The government has never said they're not allowable. Which FAR provision is that? It's the allowable cost and payment clause. And I'm willing to run a rebuttal time here. Was that FAR provision part of the prime contract? Yes. All the cost principles that are generally incorporated into every cost reimbursement contract that's specified, there's an umbrella provision, all reasonable costs are allowable, and then there are a lot of specific costs that are allowable, and subcontractor costs are among them, and termination costs have long been deemed allowable. Did I save the balance of my time for rebuttal? Yes, you do. We will save you a full rebuttal time. Let's hear from Ms. Leach. Good morning, Your Honors. May it please the Court. We respectfully request that this Court affirm the Armed Services Board of Contract Appeals' decision dismissing KBR's claim because KBR failed to present a claim within the six-year statute of limitations. This depends on your conclusion that this is a non-routine request, correct? That is correct, Your Honor. That is the crux of this case, and it is a very fact-dependent question, and that's what this Court recognized in both Parsons and Ellis, that it's a fact-dependent situation whether a request is routine, which is that it's made under the normal course of the contract, or if it's a non-routine request. So what would you say is the principle the Board below relied upon in order to conclude that this was a non-routine request? Initially, the termination for default, that KBR terminated for default the KCPC MARA, and then the alternative ground that the Board found made this a non-routine request was that in January of 2005, KBR entered into a settlement agreement with KCPC MARA. That settlement agreement was for $17 million and the right to continue negotiating further costs. But it was also converted to termination for convenience. How can that have been non-routine? How can that have been routine? Well, that is our argument, Your Honor, that at that date, in January of 2005, that's when all of the events needed to fix KBR's liability to the sub But the amount of liability hadn't been decided, so how can the claim have accrued when you don't know the amount of the claim? Well, they knew that there was some additional money out there, and the FAR does not require money damages to have actually been incurred in order for a claim to have accrued at that point. But the contract that is at issue when you're deciding if something is routine or non-routine is the contract with the general contractor. The relationships between the sub and the general contractor don't define what's routine or non-routine, correct? Well, that is, in this case, that is what took KBR's, what would have been a normal payment request, the $17 million settlement amount that KBR and the sub agreed to back in January of 2005, was a routine request. That $17 million payment was submitted to the Army, and the Army paid in due course. But Army had put on notice at the time that that wasn't the full total amount. They were put on notice, and that's precisely the facts of this case that take this outside of a routine request for payment and put it into the non-routine. I'm confused why part of the request is deemed to be a routine request and then the other part of the request is deemed to be a non-routine request. Yes, Your Honor. When you look at the facts of this case, what occurred after it, in November of 2006 KBR forwarded what they called a claim to the Army, which included some additional costs after that initial $17 million payment was made. But KBR refused to certify it, and so it was this back and forth that occurred. But isn't it fair to say that both for the 17.4 and then the second more particular request, whether it was 14 or 10, they were all coming from the same source of costs being incurred, right? But the character of the costs were all the same, which was trying to figure out how much it costs to put those facilities together and to serve all those meals and then also overhead back in the 2003 timeframe. That could be correct, Your Honor. However, it's in KBR's own letters and correspondence back and forth with the Army. There was a letter dated September 8, 2010, which is in the appendix at page 354. KBR withdrew a certified claim that it submitted to the government in 2008 because they classified, they noted that it was a business dispute between KBR and KCPC-MARS to be resolved in accordance with its subcontract arrangement. The government hasn't disputed that the request for reimbursement, whether you characterize it as routine or non-routine, these are all for costs that were incurred in the performance ultimately of the contract, right? That is correct, Your Honor. So then that's classic routine request. Well, again, when you look at the facts of this case and you look at what the submission of the claim that KBR refused to certify, the submission of a certified claim in January of 2008, the withdrawal of that certified claim in September of 2010, there was a dispute of some sort going on between KBR and KCPC-MARS. But that's exactly what the government wants them to do. They want the general contractor. The government says, We're not going to deal with your subs. You deal with your subs. You get your ducks in a row. You figure out what the agreement is, the settlement is with respect to those payments, and then you come to us. So they did exactly what they're constantly told to do, and you're saying just because they went back and forth that somehow changed the character of the repayment request? Yes, Your Honor. In this case, these are very unique facts in this case, and it's these facts that the board relied upon, and KBR hasn't disputed any of the dates that the board found in its decision in finding that the claim actually accrued either back in September of 2003 or in January of 2005 during the settling up that KBR did. Why is it a problem that the board placed a burden on the wrong party? Because KBR hasn't identified a single fact that's in dispute. So the facts are what the facts are, and if this court determines that the board correctly found that the claim accrued in either September of 2003 or January of 2005. How can a claim accrue when you don't know the amount? Well, there has to be—they knew that there were damages. The money damages don't have to actually have been incurred, but they knew that there were money damages. They knew there was an amount. Then how can it accrue if they haven't even been incurred? The FAR definition says that money damages don't have to have been incurred, but all events— I don't see any authority saying that the claim accrues when you have no idea of the magnitude of the claim or what's been incurred. Well, Your Honor, they did have an idea. They were going back and forth with the sub. They were submitting— I'm not saying in general, oh, there's millions of dollars. A precise idea is what we're talking about. Exact to the penny. Well, and KBR did submit claims to the government, the claim that they refused to certify in November of 2006. In October of 2007, they submitted a sponsored claim to the government. But that's within the six years. That is, and then ultimately— But you're saying that doesn't count. That is correct, again, because of KBR's own actions. The problem I'm having is that you're trying to say that just because there was a lot of back and forth that might have been unusual, that that all of a sudden puts it into a category of non-routine. It might have been non-routine in terms of how the government usually goes back and forth with its contractors on a claim, but it's not non-routine within the meaning of the law. I mean, all discussion of what constitutes a non-routine request has to do with circumstances in which the government either asks for additional work or cancels a contract with the general contractor. So the fact that there might have been more communications with the government doesn't make it non-routine under the regulations or under the contract. Well, again, it's whatever this dispute was between KBR and KCPC Morris that makes it non-routine. But I don't get that. The government says, I don't want to drill down to the relationship between you and your subcontractor, but I'm going to drill down and say, just because you've got a dispute with your subcontractor, I'm going to characterize it as non-routine? Well, and again, it's based on this back and forth that KBR had with the government. Submitting claims, taking them back, and then again in that September 2010 letter, denoting it as a business dispute between KBR and its sub that would be resolved in accordance with the subcontract. Doesn't that happen all the time? Business disputes with their subcontractors? Yes, Your Honor, it does happen, and that's what the $17 million initial payment and settlement was about in January of 2005. And it's the actions of KBR and its sub post-2005 that take this out of the routine and bring it to non-routine. What if there was no subcontractor and it was just the prime contractor, and the prime contractor performed all the services, built the dining facilities, served the meals, had all this overhead, but then somehow all of its computer files got wiped out and it took the prime contractor 6 or 7 years to try to figure out exactly how to rebuild what all those costs were and then submitted the request for reimbursement for all those services with the dining facilities and the meals served, et cetera. Would that be a routine request or a non-routine request? Because it was a closeout of the contract, that would be a routine request. Right, and then the prime contractor also, as far as what the government saw, initially submitted a reimbursement form but then pulled it back and then submitted another one but then pulled that back upon finding more information and then finally submitted a third one. Would that third one be a routine request or a non-routine request? Well, that would potentially also be outside of the statute of limitations. But it's a routine request? Yes, it would still be a routine request. Okay, so there isn't a statute of limitations problem in that fact pattern, that hypothetical? Well, there might be depending upon if there was a withdrawal and then the ultimate submission was outside of the 6 years. Of the first submission? Yes. Okay, no, that's not part of this fact pattern. Okay. Thanks. For these reasons, Your Honors, we respectfully request that you affirm the submissal of KBR's name. Thank you. Okay, thank you, Ms. Lynch. Mr. McClish. Thank you, Your Honor. Just a couple points. The government's arguments are completely inconsistent with Parsons Global in which this court held that in a very similar fact pattern that the submission was routine and, therefore, no claim could be brought. No claim could yet be brought because no request for payment had been made to the government and denied yet. And the court said that, and, of course, it was the government in that case arguing that the request was routine, and the court said the costs originate from scheduled contract work that the subcontractor performs on the prime contractor's behalf from 2004 to 2006. None of the work was additional or unforeseen work at the government's behest. The prime contract explicitly covers these costs. The allowable cost and payment provision provides for the submission of those costs and repayment. The payment that the prime contractor seeks is not a result of intervening unforeseen circumstances or government action. Just like here, the government hadn't done anything. Because the prime contractor's request should be submitted under the prime contract and in accordance with the expected progression of contract performance, it is routine. Therefore, in November of 2006, nothing had happened. The KBR had never requested payment of any of the costs that are issued in this case. It had determined that the subcontractor was entitled to $17.4 million. So it submitted that. It was all agreed. It was clear. That amount is owed. That was submitted and paid, taken off the table. There were other costs that were undetermined at that time that the government had never been asked to pay. So in November of 2006 was the first time a request for payment was made, and that is the very, very earliest that the statute of limitations could have begun running The claim was submitted in May of 2012, and therefore it is within six years. Now let me touch briefly on the second point. Even if you consider this non-routine, there's still the injury component. The definition of claim approval says the claim is not approved until the claimant, here KBR, has been injured. What is the injury to KBR? KBR is not injured here until the government does something to it that injures it. Just the mere incurrence of costs to its subcontractor is not an injury. That's what KBR is supposed to be doing. The government did not injure KBR until the government failed to pay when it was supposed to. That was the injury. That happened after November 2006. Therefore, the claim is timely, regardless of whether you consider it routine or non-routine. Government counsel emphasizes that this is a very fact-dependent issue, and because it's a fact-dependent issue, the board should not have found facts against KBR prior to any discovery, contrary to the allegations in our complaint, especially on the equitable tolling point, which I haven't had time to get to in too much detail here, but the board found against us factually on equitable tolling, saying that the government hadn't done anything to mislead KBR, despite our argument that the government said to do exactly what we did, work it out with the subcontractor, then bill the government. Now they're saying you shouldn't have done that because your claim is going to be out of time. So if the court does not overturn on the statute of limitations point, on the claim accrual point, on the equitable tolling, they have to send it back to the board for proper development of the record and give KBR an opportunity to demonstrate that it's entitled to equitable tolling on the facts. Any more questions? Thank you. Thank you, Mr. English. Thank you, Ms. Lynch. The case is taken into submission.